The last case this morning is AMP Plus doing business as Elko Lighting v. DMF, 2023-1997. Good morning, Mr. Rutenberg. Good morning, Your Honors. Guy Rutenberg for the appellant. It may leave the court. Proceed. Your Honors, this case presents one straightforward issue as we see it, which is whether the board erred in finding that Claim 22 is not unpatentable. And specifically, the board's finding didn't go through and decide that Claim 22 is not unpatentable. As you know, the board focused on one specific limitation, limitation M, which relates to connecting to the electrical system of a building. And even on that limitation, the board didn't make a finding that that limitation is missing. What the board found is that our client failed to present evidence on that particular limitation. And I think the board erred in making that finding. And we respectfully request that Your Honors reverse and find that Claim 22 is unpatentable. Where is the evidence that was presented? Yes, so I think in a couple places. First and foremost, and I think this is where the board made a mistake, the original and the largest argument in this case was about limitation B, which relates to the driver. And in that context, the patent owner had argued that the driver should be limited to building mains, which is 120 volts to 240 volts AC. And in response to that particular argument under the heading of limitation B, we argued quite extensively that their claim construction is incorrect. But we also explained, and this starts at excerpts of record appendix 99 through 100, we explained in the context of appendix, excuse me, of limitation B, that even under the defendant's, excuse me, even under the patent owner's construction, we explained extensively that Intra 2011 still meets this limitation as it discloses 120 volts AC LED downlight. I'm quoting from page 99 of the excerpts of record. And we cited directly to pages 6 and 7 of the 2011 catalog, which is the primary reference here, which says extensively 120 volts AC LED downlights. That's on page 6, appendix of record 396. Appendix of record 397, it says on the right hand column, Intra's groundbreaking 120 volt AC LED downlights. So that's discussed at length in the brief, in the declaration of Dr. Bretschneider, and in the primary reference itself. And then, of course, when we talked about limitation M in the record, we also talked about that extensively. And we cited back to that same evidence. Limitation M didn't add much other than saying that the device is connected to the electricity of a building. And again, on page appendix 124 to 125, we explained that the fixture is equipped. This is appendix 124 and 125? Yes. Yeah, OK. And that's the petitioner's brief. And we explained that Intra 2001 discloses that the figure is equipped with an 18 AWG triplex cable for direct hookup to an AC junction box. We talked about the cables. And again, we cited back to Dr. Bretschneider's declarations at pages 158 to 159, which again, that itself cites back to pages six and seven of the catalog, which talks explicitly about 120 volts. So where's the evidence? You've talked a lot about, we pointed to the catalog and the publication and referenced to other arguments. Where's the evidence that you presented that would support the proposition that a person of ordinary skill in the art would know how to connect the DC electricity in this particular unit to a building? Well, first of all, it's not just DC. It's AC. And that's, again, the evidence is the catalog. The recessed lighting is what, DC or AC? Well, there's both. But the catalog itself talks about AC lighting as well. Again, that's on page six and seven of the catalog. The catalog is the evidence. That's the reference. And it says 120 volts AC LED downlights. And so that's on page seven, right? Page six and seven. So on page six, on the top of the page, it says 120 volts AC LED downlights. And then on page seven, on the right column, it says, intros groundbreaking, 120 volt AC LED downlights. The reference on page six is just the heading at the top.  Yeah. True. It's the heading. I'm sorry? If I can follow up on Judge Rainey's question. I think what you're saying is not inconsistent with what your opposing counsel is saying, which is that, yes, you had a reference to Brett Schneider. And yes, there was a reference to page six. But it wasn't in the context of saying why it is that this is suitable for attachment in a building. The references to 120 VAC, you have to dig into the Brett Schneider and to the IMTA 2011, I guess it is, catalog. And then treat the very brief discussion of limitation M as if it incorporated a statement that here are the sources of the building limitation. You never tease that out. So the question is, was it the obligation of the board to try to figure out, ah, if we go to Brett Schneider, we can figure out there's a reference to 120 volts. And 120 volts at least implies could be used in a building as opposed to on a boat. Now, is it the board's responsibility to do that? Or was it yours? Well, obviously, it's our responsibility to begin with. But I would beg to differ that we didn't do that. Because I think we did. And I think that's why I started. Well, it certainly would have been easy to fix the problem, right, by adding two sentences at the end of your very brief discussion of limitation M. True, although limitation M, there's also a reply brief. And in limitation M, it was not one that was disputed. The dispute was. And this is why I think we did call it out in the context of a building. And that's why I started with page 29 of the petition, which is appendix page 99. Because that's what we did in the context of limitation B, the driver. And the reason that they did it there is because that's what meet of the argument was about. The argument was the other side claimed that the driver is limited to building Maine's power. And so in responding to that argument, we explained quite explicitly that, OK, even if that were true, which it's not, and the court and the board both rejected that construction. But in responding to that construction, we said quite explicitly that the IMTRA 2011 still meets that limitation. And it's in that context that we talked about 120 volts LED. And in fact, it was also this concept of 120 volts. By the way, in the board's decision in remand, the board just doesn't address the 120 volts AC. It doesn't mention that issue at all. But in the original briefing, the entire argument, or I would say the bulk of the argument from the patent owner was about building Maine's. And that means 120 to 240 volts. That's what their argument was. And so it was in that context that we addressed it. And so I do think in that context, it's the board's obligation to look at the entire briefing, not just the three lines that's sort of at the end of the briefing. Counselor, you want the board to connect the dots. You want the board to take one of your arguments and to say, oh, look, this argument applies over here as well. Well, it's the same argument, Your Honor. I don't think it's a different argument. I think the question becomes, at what point does our argument, because someone could accuse us of being redundant. And I didn't write this briefing. I don't think that's the worst flaw in the commitment. Maybe not. Maybe not. And maybe that would have been a better option. But the fact that the petitioner in the brief itself says it's citing to the right pages and it's citing to the declaration, and when you talk about the actual limitation that was disputed by the other side, they go back and say, here it is, and it's on page 29 of our brief. And it wasn't just a small argument that was buried. That was much of the argument was about whether or not this limitation, the driver limitation, is satisfied. And so I think we had argued, maybe we should have argued more explicitly under limitation M, but we'd argue explicitly that even under their construction, driver is satisfied because of pages 6 and 7, which talks about 120 volts, which is building mains. And I think that's really the key of the argument here. I think the board simply overlooked that point. I also think, as we explained in the brief, that once you have a device that's in the prior art, and I think this device is in the prior art, whether you connect it to a building or not, the fact that it can be connected to the building, whether or not it actually was, and I think it was, but whether it was or not, that doesn't make it patentable. That's not a patentable distinction. If you take a prior art and it has a new purpose, that doesn't make it patentably distinct. That's all I would say. The rest of my time is rebuttal. We will sign before you. Mr. Long. Good morning, Your Honor. May it please the court. I want to respond then to what was discussed about this 120 volts on pages 6 and 7 of the entry 2011 catalog. And one thing that's important to understand, and I'm referring to pages 9 through 10 of our red brief, there's two sets of products that were at issue. One set of products were low voltage products. And you'll see that on page 9 of our brief. They received 10 to 30 volts DC. And that's what Elko's argument was about. For every limitation in the claims was directed to these low voltage devices. For that one limitation, M, they refer to this Sardinia Cypress products. You'll see that at pages 9 through 10 as well. What about limitation B? Excuse me? What about limitation B, which they say they cited the pages 6 and 7 of, to include the Sardinia and Cypress? Yes, Your Honor, for that limitation B for driver, and keep in mind this limitation M is about whether or not the driver is connected to the electrical system of the building. So for limitation B, they also point to this Sardinia and Cypress, these high voltage products. And what's significant about these products is they, and if you look at the image, you'll see it has a big black heat sink stacked on the back of a silver housing with the LEDs inside. And that big black heat sink houses this 120 volt driver. You see it's 120 volts. Very different from these low voltage products. They're very low profile. You'll see this Sardinia Cypress products are very tall products. Very different. And so the key issue here. Is the driver a converter? That's a good question. In the Sardinia products, Cypress products, it is. And recall that the claims require that you have a driver inside a unified casting. So the Sardinia products, those high voltage products, they don't have unified casting. They have a driver sitting in this big black heat sink on the top, and then the LEDs that receive low voltage DC inside. So the Sardinia products, these high voltage products, are very different than the low voltage products because their driver was stacked on the back of the heat sink to convert it to low voltage that the LEDs use. And so every limitation that they relied on for, there's lots of limitation to claims. You have a unified casting. It has an internal driver. Unified casting, in some cases, has a plenty of elements. But when they look at the, for the driver being, what is it in claim, limitation, and the driver's coupled to the electrical system of a building, which is 120 volts, they point to this different product in Sardinia, Cypress, high voltage products. So what's important there, and what they didn't do in doing that combination, they didn't say why it would have been obvious to modify those low voltage products that they relied on for every other limitation. To modify them, so that they received. Other than pointing to those references, did they submit any evidence to support their position? Just the ones that they pointed here recited, they cite to that page six with that high voltage product, and they cite to two paragraphs from their expert that is basically citing to the same thing, saying that DMG 2011 does disclose some products that receive 120 volts. But it wasn't the low voltage products that they relied on for every other limitation in the claim. And they made no argument at all that it would have been obvious to modify those low voltage products with all the limitations they needed, so that they received 120 volts. And that's important. When you look at one of the prior references they asserted, it was in ground three, which they're not appealing. It seems that that would be a very simple argument to make, that a person awarded your skill would have the knowledge to convert DC power into AC power. And so I think that's why, if they had made the argument, we would have been able to put, we would have had a record where we would have put evidence to rebut it. The fact is, they're making an argument now they didn't make before. Because the issue with that is, and that's what I was just about to explain, when you look at this Gifford patent that they relied on for another ground, it expressly taught you want to only have a low voltage device connected to a junction box, and you want to have separately a thing that converts the high voltage to low voltage. You want that for safety reasons, so that when you replace that light, you don't stick your hand into that high voltage and get electrocuted. There's reasons why you just don't simply convert something from a low voltage to a high voltage. The high voltage device may have more heat dissipation issues, so you're going to have to modify this small product. There's a lot of things, a lot of evidence we would have put in if they had made the argument that they're making now, a lot of the new arguments, that we didn't have the opportunity to do then. So it's not as simple as you get to it. And that's a lot of things with inventions. What might seem like a simple thing to do after the fact probably wasn't at the time. And that's the case here. So the point is, when you look at the arguments they made, we responded to the arguments they made. Not the arguments they're making now, we responded to the arguments they made. We produced a record based on the arguments that they made. And so the board's decision is absolutely right. We've mentioned this in our brief. Alco's Appeal cites a lot of evidence they've never even cited to the board before, much less cited to the board for the argument presented here. And so it's very clear that the board was perfectly within its discretion to say, here's all you cited for us. We don't have to go search the record for parts of the record you didn't cite. We don't have to consider arguments you didn't make, but maybe wish you would have later. And so I think the board's substantial evidence absolutely supports what the board's done here. I want to mention another thing, unless there's more questions on that 120 volts. But that is the problem. They never showed why it would have been obvious to modify these low voltage devices that they rely on for every other limitation so that they would receive high voltage. And it's not as simple as you would think. That's why you need the evidence, which they didn't have. There's another issue too here, which is a basic premise when you read their brief is that the panel in the first appeal had ruled that the patent office had found every limitation of claim 22 was met by the entry 2011 product. Now, they don't cite anything in the board's decision where they found that entry 2011 disclosed every limitation of claim 22, because there's not one. What had happened, though, and I apologize to address since we wrote the decision, but it's a non-precedential decision, right? It's meant to prize you of enough information that parties who know the record knows what happened. And they kind of glom on to a statement in that decision that says that the board had found every limitation of the challenge claims disclosed in the entry 2011 catalog. And then that decision cited page 17 of the Westlaw version of that decision. It cited to the anticipation argument that the board had made. Claim 22 wasn't challenged as anticipated, right? They didn't challenge it because claim 22 said it had to be coupled to the electrical system of the building. So what that opinion cited to in the factual background section, just kind of getting us on the ballpark, it cited to the anticipation section of the board's decision that didn't mention claim 22 at all. In fact, if you just read a couple sentences down, that first panel decision says the board didn't consider anticipation of claim 22 at all. In fact, when you read the page that the opinion cited to from the board decision, it lists the decision, the claims it was listing for all the limitations being in the entry 2011, that challenge, it doesn't list claim 22. And the very next paragraph even says that Elko didn't challenge claim 22 as anticipated. Not only that, not only was that not a holding of the court that the board found something it didn't, when you actually look at the holding of the court, the holding of the court was we vacate the board's decision on claim 22. And we remand it to the board to explain why their patentability decision for claim 22. So even if the federal circuit had, and the board had found that every limitation of claim 22 is in the prior art, and it didn't, the remand vacated whatever the decision was and sent it back below. That's a long explanation, but it's kind of, we know the case, we live and breathe it, we know what was argued, what was decided. And so it's a personal pet peeve, for lack of a better word, that they would argue that the board found something they didn't, and then try to take advantage of a loose statement, the non-presidential decision to say something that didn't happen. I don't know if your honors have any questions about that. We have one last issue that wasn't touched on yet, and that's the subject matter jurisdiction issue. That deals with the change in the AIA said that the patent office has the right to intervene in appeals from NIPR. Recall the patent office is usually a party to appeals from the patent office patentability decisions. That changed with AIA. And so, and the statute says that you should file your notice of appeal within the time prescribed by the patent office. And the patent office had a regulation that says you should file a notice of appeal that provides sufficient information for us to determine whether or not we want to exercise our right to intervene in this appeal. And so it was a wonderful decision by Judge Rich LaPage, I think is what it was called, that went through our history of appeals and why you used to have your reasons for appeal. And then they took that away, et cetera. But where we're at is that the board, the patent office has said, you need to give sufficient reasons in your notice of appeal while you're appealing. So we need to decide whether or not we want to exercise this discretion. And you need to do that within 63 days of our decision. So what we have here is they also use a form five of the Federal Rules of Appeal Procedure notice of appeal from an administrative agency, which doesn't say anything about what you're appealing other than you're appealing the decision. And so that doesn't meet the patent office's regulations and what you put in a notice of appeal. But the patent office's regulations don't set out what jurisdictional bounds there are that are defined by the failure to file a notice of appeal, right? I'm just saying. If an agency says, well, we'd like you to write your, that Congress says you have to file a notice of appeal. The agency says, well, you know, the notice of appeal ought to be in 14 point type. And you didn't file it in 14 point type until after the expiration of the deadline. You still filed a notice of appeal. Congress has not said it has to be in 14 point type in order for the court to get jurisdiction, right? I agree with that situation, yes. But what Congress did say here is that you will file a notice of appeal in writing to the patent office within the time period as prescribed by the patent office. And no less than that.  Yeah, they met the time period. They met the time period for just a general notice of appeal. What they didn't meet are the requirements under the regulation for the notice itself and the amount of information provided. But that's not, that doesn't go to our authority to hear the case. That's not jurisdictional in nature. Well, I think in that case, the rules say here's what your notice of appeal is. Your notice of appeal is something that gives us enough information so we can decide whether to intervene or not. And that just wasn't given. But the patent office decided not to participate after having gotten the information they needed. But after the date for the notice of appeal. I want to be clear, we have a duty, if there's an issue of subject matter jurisdiction, to raise it on the merits we think we should prevail. But I think on this issue, technically, as much as if your due date for a notice of appeal is on X date and you do it X plus one, that that is a jurisdiction issue. And the notice of appeal filed here was not what the patent office deemed to be a notice of appeal. And it was important, it's not just a circumstance. It gives them an opportunity to decide, do we want to exercise that right to intervene? You raised it. Thank you, Your Honor. I think if y'all don't have any more questions, I've seen the rest of my time. Thank you. Thank you, Mr. Long. Mr. Rudenberg has a few minutes for rebuttal. Yes, thank you, Your Honors. A few points in rebuttal. I'll start where my friend on the other side started, where he started to distinguish the different sets of products in the catalog. Of course, that's not what the board did. And so there's no basis for affirming on that ground, because that's not what the board did. That would require an entirely new analysis that the board didn't do. And in fact, the board did the opposite. In the board's initial decision, the board rejected this analysis. The board said, actually, we can look at these different disclosures. The board said that the vast majority of what's being discussed here is from the power LED disclosures, including the unified casting. And that also is found in all of the different limitations. That's in the board's initial decision. And in fact, in the first decision by the panel in the opinion that Your Honor, Judge Bryson wrote, I believe, you explained and affirmed that the board's rejection of what they had called this mix and match argument. And so the board actually quite explicitly said that the petitioner could and probably did rely on pages six and seven. And there's nothing in the opinion suggesting that that was the basis. Secondly, there's a lot of discussion about whether we have to show that this was 120 volt AC. And I think we did show that. But I think it's also important to note that the claim doesn't require any specific type of current. It doesn't require any specific type of voltage. The claim just says that it can be connected to the electricity of the building. And in fact, there was agreement among both experts that buildings can be AC or DC. I think it's in paragraph 99 of the initial declaration of Dr. Bretschneider. There's no construction that was given either implicitly or expressly by the board, nor construction requested with the request of limitation M. And so there's no specific voltage, no specific type of connection that's required there, just that you connect it to a building. I do think I would just point this out. There was testimony in the record. It wasn't cited in the briefing because it wasn't disputed at the time. But there was testimony that actually these all the different types of devices in the catalog had been connected to a trade show booth, which I would say is a building. That's the Breitmaier deposition at page 22, line 19 to 23, line 5, exhibit 2089 in the record below. And I think there was also a discussion about why we argue law of the case in this brief, and part of why we argue law of the case, and part of why it's important to point to this court's statement explaining that the board had found all the other limitations is because the only arguments that had been made in the past, meaning in the first round of briefing, were arguments that had been rejected by the board and then affirmed by the court. Again, setting aside the plurality of elements limitation, the only arguments that had been challenged was this construction of driver and then this notion that you can't mix and match. And both of those arguments had been rejected by the board as affirmed by this court in the first appeal. And so there really isn't any other challenge to claim 22 that wasn't there before. And there's really no reason why the board couldn't have. And Frank should have relied on pages 6 and 7. And there was testimony explained from Dr. Breitmaier that one of ordinary skill in the art, I believe that's paragraph 159 of his declaration, where he explains that one of ordinary skill in the art would know how to do this and would use this in the building if one so choose. On the waiver argument, I'm happy to address that if the court has questions. But I think it's a little bit odd to argue waiver on an argument that both this court directed the panel to consider and the board did consider. So the board didn't view it as waived. The board actually considered the argument. They just didn't consider the evidence. And I think the way the board considered it is just as they considered claim 17, they said claim 17 was invalid as anticipated over ground one. They then said it's also obvious under ground two based on the combination of the 2011 and 2007 reference. And what the board said, and frankly what this court has said in prior decisions that we cited, is obviousness is, excuse me, anticipation is the epitome of obviousness. And so the board could and did consider this argument as a valid argument based on either the 2011 reference by itself or in combination with the 2007 catalog. So there's no question that it was considered and could be considered. I think I'm out of time. Thank you, Your Honors. That is correct. Thank you to both counsel. The case is submitted. And that concludes today's argument.